KOLODZIEJCZAK *v.* BAK.

1. BROKERS — COMMISSIONS — EXCLUSIVE LISTING — ACTION BY BROKER FOR COMMISSIONS TERMINATES EXCLUSIVE LISTING.

The commencement of an action by a real estate broker for commissions on an exchange of property under an exclusive listing contract with the owner had the effect of terminating said contract, and the fact that the broker was unsuccessful in said action did not have the effect of reinstating it.[1]

2. SAME — BROKER NOT ENTITLED TO COMMISSIONS ON SALE OF PROPERTY AFTER TERMINATION OF EXCLUSIVE LISTING CONTRACT.

Where an exclusive listing contract was terminated before the owner disposed of his property, the broker was not entitled to commissions on said transaction.[2]

Error to Wayne; Merriam (DeWitt H.), J.    Submitted June 3, 1925.    (Docket No. 22.)    Decided March 20, 1926.

[1]Brokers, 9 C. J. § 101; [2]Id., 9 C. J. § 101.

Assumpsit by Mateluz Kolodziejczak against Anthony Bak and others for commissions on an exchange of real estate. Judgment for defendants *non obstante veredicto*. Plaintiff brings error. Affirmed.

*Harry J. Lippman* (*Ernest W. Ver Wiebe,* of counsel), for appellant.

*Bresnahan & Groefsema,* for appellees.

STEERE, J. Plaintiff, Mateluz (Matthew in English) Kolodziejczak, is a real estate broker in the city of Detroit. Defendants Bak are husband and wife as are also defendants Bednarz. They owned an equipped 160-acre farm in the township of Sumpter (or Van Buren), Wayne county, Michigan. On January 2, 1920, they gave plaintiff an exclusive listing in writing of this property in which the sale price was fixed at $28,000. Down—$22,000. For his services they agreed to pay him "a cash commission of 5%, on the selling price of said property." Plaintiff drove out to defendants' farm to secure this listing, accompanied by his brother Michael, who witnessed the instrument and was also in the real estate business officing with his brother, but they were not partners and neither had any interest in the other's business, as both testified. At the time he secured this listing, plaintiff told defendants of a possible exchange of their property for that of a man in Detroit named Deboski, whose property consisted of a lot with a building upon it next to the one in which he officed, the downstairs being for business purposes and the upstairs consisting of rooms, or apartments. Some negotiations followed, indicating a probable deal but objections by the defendant wives resulted in that proposed deal then falling through. About that time plaintiff's brother Michael interested himself in this matter and found a man named Budzik who had a property which

he desired to sell or exchange and listed it with Michael, giving him on January 6, 1920, an exclusive listing of it, the price and terms, so far as material, being:

"$27,000 cash, or $30,000 cash, balance . . . . . . . . . . . and in case you find a buyer ready and willing to consummate a deal on the foregoing terms, or in case of sale by you of said above described property during the life of this contract, I agree to pay you 3 per cent. as a commission, and all over the sum of . . . . . . . . . . . . . . . . received therefor, * * * This agreement shall be in full force for the term above specified, also to continue until I give you . . . . . . . . . . . days' notice of withdrawal." (No "term above specified" is stated in the written listing.)

This property consisted of a 60-foot lot at the corner of Lumpkin and Andrus avenues in Detroit, upon which was a dwelling house and a bakery with fixtures and equipment for the baking business, including two Ford delivery trucks. Michael conferred with his brother as to an exchange being brought about between their respective clients, and they exerted themselves to that purpose. Negotiations followed, resulting in a contract between defendants and Budzik and wife for exchange, or sale to each other, of their respective properties. This was evidenced by an executed written agreement dated January 7, 1920, detailing the terms of the deal and signed by the contracting parties.

By that agreement it was expressly provided as follows:

"It is agreed and understood that the parties hereto are depositing one thousand ($1,000.00) dollars note each at the Merchants & Mechanics' Bank of Hamtramck, as a deposit to bind this deal and should either party hereto withdraw from this agreement the $1,000 note shall be turned over to the other party as damages. * * *

"The parties of the first part agree to pay the agents Michael Kolodziejczak three (3%) per cent. com-

mission for selling their property and the parties of the second part agree to pay their agent, Mathew Kolodziejczak, five (5%) per cent. commission for selling their property."

This agreement was a trading transaction with boot to be eventually paid by defendants, in order to make the trading prices placed on the properties equal, that stated for defendants being $24,000 and for Budziks $30,000. No money was required to be paid down on this exchange. Giving a mortgage by defendants was contemplated and the first money they were distinctly required to pay directly to Budzik was "interest to be paid within six months from date" on the balance, or "the remaining amount then due on the purchase price of $30,000." After the agreement and notes for damages in case of withdrawal were signed there was considerable delay in procuring desired abstracts of title, but some time in April, 1920, the two brothers went out to defendants' farm with a view to completing the transaction. Michael, representing Budzik, testified that he told them "I had the abstract ready and an assignment of contract and was ready to go ahead with the deal. I said 'I want you to sign with us, else you go with me to the Merchants & Mechanics' Bank.'" They refused to do either and made plain they had decided to withdraw from the agreement. Their reasons are foreign to this issue, as is also the fate of their note for $1,000 deposited with the Merchants & Mechanics' Bank as stipulated damages in case of withdrawal.

Both Budzik and defendants appear to have been adverse to paying the brothers their commissions on this deal which did not go through, and both plaintiff and Michael took prompt action in the circuit court to recover the same under the terms of the agreement of January 7, 1920, in which they were unsuccessful. The result of those cases is disclosed in *Kolodziejczak*

v. *Bak*, 220 Mich. 274; and *Kolodziejczak* v. *Budzik*, 230 Mich. 475.

After those cases were commenced both Budzik and defendants independently sold or traded to others their respective holdings described in the agreement of January 7, 1920. The brothers then sought to recover commissions under the earlier general listings of the properties with them by their respective clients. Plaintiff's first case (reported in 220 Mich. 274) was commenced in the circuit court on May 18, 1920, submitted to this court on his appeal June 13, 1922, and decided October 2, 1922. While that case was pending here and not yet submitted he, on March 21, 1922, commenced the instant case in the circuit court, where an adverse judgment resulted and he has brought it here for review. After plaintiff commenced his first suit against defendants, resting his case upon the exchange agreement of January 7, 1920, they sold their farm to Deboski, whom plaintiff called to their attention when he obtained his first listing with a view to an exchange of properties which did not materialize. In this case he claims a commission under his earlier listing, on the ground that he produced a customer ready, willing, and able to buy. Defendant's purchase under that listing was $28,000 with $22,000 down. Deboski was not produced as a witness, and there is no proof that he was then or ever able, willing and ready to buy defendants' property on those terms. At conclusion of proofs in this case a motion was made by defendants' counsel for a directed verdict upon which opinion was reserved under the Empson act. Plaintiff had verdict which on motion was set aside by the court and judgment *non obstante* entered for defendant.

It is sufficient to say of the decision reported in 220 Mich. 274, that the court affirmed the judgment against plaintiff on the theory and merits of the claim

upon which plaintiff rested and tried his case, but upon a question of pleading merely held the judgment was not a bar to a subsequent action on a count erroneously stricken out, with no suggestion as to the merits of such an action or what the result should be when tried out.    An examination of the record in the case of plaintiff's brother Michael (*Kolodziejczak v. Budzik,* 230 Mich. 475) discloses that it quadrates in essential facts with the instant case, and is controlling here, as the court there said:

"Plaintiff by his first suit released defendants from all further obligation to let him sell or exchange their property, and his failure to recover his claimed commission did not revive the listing.    Defendants when sued on the claim that plaintiff had performed his engagement under the exclusive listing had a right to consider the listing at an end regardless of the result of the suit and to sell their property without paying any further attention to the listing."

The judgment will stand affirmed, with costs to defendants.

BIRD, C. J., and SHARPE, FELLOWS, CLARK, and McDONALD, JJ., concurred.    WIEST, J., did not sit.

Justice MOORE took no part in this decision.